lml/kmo

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LISA JANE GRAHAM, )<br>    )<br>              Petitioner, )<br>    v.         )<br>    )<br>RICHARD KOERNER, et al., )<br>    )<br>    )<br>              Respondents. )<br>_____ ) | Case No. 06-3317-JAR |

## MEMORANDUM AND ORDER

This matter is before the Court on petitioner Lisa Graham's Petition for a Writ of Habeas Corpus (Doc.1) seeking federal habeas relief from a state conviction, pursuant to 28 U.S.C. § 2254. Respondents filed an Answer and Return (Doc. 24) and petitioner filed a Traverse (Doc. 29). Graham has also filed a Motion to Compel (Doc 51). Having carefully considered the parties' submissions, the Court is prepared to rule. For the reasons stated below, the Court denies petitioner's request for federal habeas relief.

## I.    Background

On September 28, 1999, Graham was found guilty in an unrelated charge and left the Court Services Office upset and without following court orders. Graham was told that if she walked out, she would likely be jailed for 60 days, but left the court house anyway. She went home and fell asleep. When she awoke around three a.m., she stretched a wire from her refrigerator to the basement door hinge to alert her if it were opened and anyone came inside. She also placed a bowl containing charcoal lighter fluid in front of the door and placed a candle between the bowl and the door. Graham stated the purpose of the candle was in case someone

came in, the candle would be knocked into the charcoal fluid when the door opened and the person would see the flames and stay out.

On September 29, 1999, police officers went to Graham's home to serve a bench warrant because she missed her court appearance. Graham did not open the door. The officers contacted the Cellular One store where she worked and were told no one had seen her.

On September 30, 1999, Graham stated that she contemplated committing suicide by carbon monoxide poisoning. While attempting to pour gasoline into her car, Graham poured gasoline all over the outside of her car, the garage floor, and herself. Graham crawled through a window back into her house. Graham brought the gasoline into the house with her and spilled gas all over the window sill, herself, and the basement. Graham then decided to burn her house down and poured gasoline throughout the house. After sleeping for a few hours, Graham awoke and typed a suicide letter and pinned it to her jacket. She then packed a bag and put her gun in her back pocket.

Later that day, Graham spoke to a co-worker at Cellular One after leaving a message with her boss that she would not be coming back to work. Her co-worker stated that Graham appeared to be aware that the police were looking for her and stated that she was not going to turn herself in. After the call ended, the co-worker called the suicide hotline, and stated that she was worried Graham was going to commit suicide, that the police were looking for her, and that she had the impression that Graham felt there was no other way out besides suicide.

Officers Brandon Tomson and John Krenowicz, with the Salina Police Department, were dispatched to Graham's home in reference to the call to the suicide hotline. The officers knocked on the door, but Graham did not answer. Krenowicz entered the house through a

window, along with a third officer Lamer, and detected a strong odor of gasoline.  The officer

saw Graham at the doorway to the basement holding a cigarette lighter and roman candles.

Graham refused to drop the lighter as the officer requested and the officers decided to get out of

the house.

On the way out of the house, Officer Krenowicz heard popping sounds, like roman

candles going off.  Graham stated that she lit roman candles in the basement, kitchen, and living

room trying to set the house on fire.  Officer Krenowicz ran into the bowl and candle that

plaintiff set out earlier.  Once outside, the officers stated that they could see flaming balls

coming from the roman candles, and Officer Lamer was hit in the chest with a fire ball from a

roman candle while he attempted to extinguish the flames with a fire extinguisher.

As the officer was attempting to extinguish the fire balls, he saw an outline of Graham in

the house.  Graham dropped the roman candles and took the gun out of her back pocket and put

it under her chin.  Officer Lamer rushed into the house and tackled Graham.  When the officer

hit Graham, the gun went off.  He then removed Graham from the house. Officer Krenowicz

stated that he could not see through all of the smoke, but he heard the gunshot.

On October 4, 1999, Graham was charged in the District Court of Saline County with two

counts of attempted first degree murder in violation of K.S.A. § 21-3401(a) and one count of

aggravated arson in violation of K.S.A. § 21-3719.  The Court declared a mistrial after the jury

twice informed the judge that it was deadlocked on the murder counts.  Graham was acquitted of

the aggravated arson count.  The State subsequently amended the complaint to add four counts of

aggravated assault on a law enforcement officer in violation of K.S.A. § 21-3411.  At the

subsequent trial, Graham was convicted of two counts of attempted first degree murder and three

counts of aggravated assault on a law enforcement officer.  Graham was sentenced to 120 months imprisonment and 60 months post release supervision.

On appeal to the Kansas Court of Appeals, Graham alleged various trial court errors, insufficient evidence, double jeopardy and multiplicitous counts.  The court reversed the convictions of aggravated assault on a law enforcement officer and the 60 month post-release supervision and remanded the case for resentencing.[1]  The court affirmed the convictions of attempted first degree murder.[2]  The Kansas Supreme Court affirmed the decision of the Court of Appeals.[3]  Graham was resentenced to 120 months imprisonment and 36 months post release supervision.

The Saline County District Court denied Graham's K.S.A. § 60-1507 petition and the Kansas Court of Appeals affirmed the denial.[4]  On appeal, Graham alleged that the district court failed to make sufficient findings regarding each of her claims.  The Kansas Supreme Court denied review.  Graham filed for federal habeas relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Kansas.  Defendant subsequently filed a motion to compel requesting the Court issue a final determination on her § 2254 petition.

## II.    Standard

The Court must construe pro se pleadings liberally and apply a less stringent standard

---

[1]*State v. Graham*, No. 86,899 (Kan. Ct. App. June 20, 2003) (unpublished opinion).

[2]*Id.*

[3]*Kansas v. Graham*, 277 Kan. 121, 83 P.2d 142 (2004).

[4]*Graham v. State*, No. 94,306 (Kan. Ct. App. Apr. 14, 2006) (unpublished opinion).

4

than what is applicable to attorneys.[5]  However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[6]  The Court need only accept as true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[7]

Because petitioner "filed [her] habeas petition after April 24, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this [proceeding]."[8]  The AEDPA "'circumscribes a federal habeas court's review of a state-court decision.'"[9]  Under 28 U.S.C. § 2254(d), a federal court may not grant habeas relief on any claim adjudicated in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

A state court's decision is "contrary to" an established federal law if the state court reaches a different result than the Supreme Court would when presented with facts that are "materially indistinguishable from a relevant Supreme Court precedent" or if the state court

---

[5]*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Whitney v. N.M.*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[6]*Whitney*, 113 F.3d at 1173.

[7]*E.g., Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[8]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003) (citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997)), *cert. denied*, 540 U.S. 973 (2003).

[9]*Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir. 2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003)), *cert. denied*, 540 U.S. 916 (2003).

5

"applies a rule that contradicts the governing law" set forth in Supreme Court cases.[10]  A decision is an "unreasonable application" of clearly established federal law if a "state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."[11]  Unreasonable application of facts includes an unreasonable extension of a principle, or an unreasonable refusal to extend a principle to the facts at hand.[12]  The courts are to employ an objective standard in determining what is unreasonable.[13]

Although unreasonable determinations of fact are a second basis for a writ, a state court's determination of a factual issue is presumed to be correct.  The petitioner has the burden of rebutting this presumption by clear and convincing evidence.[14]  "This presumption does not extend to legal determinations or to mixed questions of law and fact."[15]  "That is, the 'deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue.'"[16]  "Ultimately, our review of the state court's proceedings is quite limited, as section 2254(d) sets forth a highly deferential standard for

---

[10]*Williams v. Taylor*, 529 U.S. 362, 405 (2000).

[11]*Id.* at 413.

[12]*Id.* at 407.

[13]*Id.* at 409.

[14]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003), *cert. denied*, 540 U.S. 973 (2003); *Fields v. Gibson*, 277 F.3d 1203, 1221 (10th Cir. 2002).

[15]*Martinez*, 330 F.3d at 1262 (citing *Herrera v. Lemaster*, 225 F.3d 1176, 1178-79 (10th Cir. 2000)).

[16]*Id.* (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)).

evaluating state-court rulings."[17]

## III.    Analysis

Graham requests relief based on twelve issues.  Eight of the issues are procedurally

defaulted and will not be considered by the Court.  The Court will consider in turn Graham's

remaining claims of insufficient evidence to support the conviction of attempted first degree

murder, multiplicitous charges in violation of the Double Jeopardy Clause, prosecutorial

misconduct, and denial of petitioner's K.S.A. § 60-1507 petition.

### A.    Procedurally Defaulted Claims

The State has suggested the following claims asserted by petitioner are procedurally

defaulted because they were not properly raised before the state courts:  (1) the court's reply to

the jury question of the definition of premeditation prejudiced the outcome of the case and

deprived her of a fair trial; (2) the exclusion of evidence by the court permitted malicious

prosecution; (3) the court violated her rights when it failed to present her theory of suicide in a

lesser charge to the jury; (4) the State committed prosecutorial misconduct by knowingly

presenting false testimony or implied findings to show that her claim had no merit; (5) the court

sequestered her from conferring with defense counsel after calling a recess; (6) a potential juror

raised a racial issue and the court's response gave the impression of racial partiality; (7) the trial

court erred in failing to request a change in venue; and (8) the Kansas doctrine for attempted

murder diminishes the State's burden of proof and was not used in her case with the legislative

---

[17]*Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir. 2003) (internal citations omitted), *cert. denied*, 540
U.S. 916 (2003).

7

intent.[18]

The procedural default doctrine bars a federal court's review of a state prisoner's federal claim where the prisoner failed to give the state courts a "full and fair" opportunity to resolve that claim—as the exhaustion doctrine requires—and the prisoner cannot cure that failure because state court remedies are no longer available.[19]  Under such circumstances, although the state courts did not explicitly deny relief on a state procedural bar, "there is a procedural default for purposes of federal habeas."[20]  In this case, petitioner's failure to seek or obtain full state court review of any of the above claims raised in the instant petition supports the State's claim of procedural default.

Petitioner can avoid the procedural default bar if she were able to show cause for the default and actual prejudice as a result of the alleged violation of federal law, or show that the failure to consider any procedurally defaulted claim will result in a fundamental miscarriage of justice.[21]  Generally, "cause" requires a showing by petitioner that some objective external factor impeded her efforts to comply with the state procedural rules.[22]  "Prejudice" requires a showing

---

[18]Petitioner argues that issue (8) was raised in her K.S.A. § 60-1507 petition.  The state court summarily denied her petition because it was a rehash of her direct appeal.  The issue was not raised on direct appeal, thus the Court concludes it was not raised in her K.S.A. § 60-1507 motion.

[19]*See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (procedural default doctrine preserves integrity of the exhaustion doctrine); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (a "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion . . . [because] there are no state remedies any longer 'available' to him," and, thus, that the procedural default doctrine prevents a habeas petitioner from circumventing the policy underlying the exhaustion doctrine).

[20]*Coleman*, 501 U.S. at 735 n.1.

[21]*Id.* at 749.

[22]*Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

that petitioner has suffered actual and substantial disadvantage as a result of the default.[23]  To excuse the procedural default on the basis of the fundamental miscarriage of justice exception, petitioner must supplement her constitutional claim with a colorable showing of factual innocence.[24]  To establish actual innocence, petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted h[er]."[25] Furthermore, "'actual innocence' means factual innocence not mere legal insufficiency."[26]

Petitioner has not satisfied any of these requirements.  Graham mistakenly asserts that the issues were raised in state court and not procedurally defaulted.  Graham also asserts that the allegedly solicited testimony of Fire Inspector Helm about the origin of the fire caused a miscarriage of justice and probably resulted in the conviction of an innocent person.  The Court disagrees because there was ample evidence that Graham doused the house in gasoline and then set off several roman candles with the intent to burn the house down.  Petitioner has not shown that it is more likely than not that no reasonable juror would have convicted her without Helm's testimony.  Moreover, Graham only asserts legal insufficiency and makes no claim of factual innocence.  Therefore, in the absence of a showing of cause and prejudice or actual innocence, the Court declines to review the eight claims listed above.

### B.      Insufficient Evidence to Support a Conviction of Attempted First Degree Murder

---

[23]*United States v. Frady*, 456 U.S. 152, 170 (1982).

[24]*Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).

[25]*Bousley v. United States*, 523 U.S. 614, 623 (quoting *Murray*, 477 U.S. at 496, 523 U.S. at 623 (internal quotations omitted).

[26]*Id.*

*Jackson v. Virginia*[27] establishes that when considering the sufficiency of the evidence in a federal habeas corpus petition, the Court must decide whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[28] Sufficiency of the evidence is a mixed question of law and fact, so the Court must apply both 28 U.S.C. § 2254(d)(1) and (d)(2).[29] Because of the presumption of correctness afforded by 28 U.S.C. § 2254(e), the Court must give deference to any determination of factual issues by the state court.[30] Further, it is not the purview of a federal habeas court to weigh conflicting evidence or assess the credibility of the witnesses.[31] Rather, a federal habeas court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."[32]

The State's theory of the case apparently was that Graham was angry with the legal system and wished to engage in "suicide by police" by forcing the police to kill her before they died in a house fire caused by her ignition of fireworks. Graham argues that there was no intent or overt act to support a conviction of attempted first degree murder and there is evidence in her favor that outweighs the government's evidence. The standard of review, however, prohibits this Court from making such a determination.[33] The Court defers to any determination of factual

---

[27]443 U.S. 307, 313 (1979).

[28]*Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008) (quoting *Jackson,* 443 U.S. at 319).

[29]*Id.* (citing *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2005)).

[30]*Id.* Additionally, the Court is cognizant that a state court's interpretation of a state statute "is a matter of state law binding on this court." *Parker v. Scott*, 394 F.3d 1302, 1319 (10th Cir. 2005).

[31]*Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993).

[32]*Jackson*, 443 U.S. at 326.

[33]*Id.*

issues by the state court, which concluded after viewing the evidence in the light most favorable

to the prosecution, that a rational trier of fact could find beyond a reasonable doubt that Graham

committed attempted first degree murder.  Therefore, it is not the Court's place to review

conflicting evidence.

The Court does not find the state court's decision contrary to or an unreasonable

application of federal law.  Nor does it find the decision an unreasonable determination of the

facts.  Graham knew the police were looking for her.  Graham poured gasoline inside the house

and then set her house on fire with a cigarette lighter and roman candles after seeing a police

officer inside of her home.  Although Graham contests the government's evidence of intent by

arguing she did not know officers were in her house when she was firing the roman candles, the

Court presumes the trier of fact resolved the conflict in favor of the prosecution.  After viewing

the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of attempted first degree murder beyond a reasonable doubt.

Graham's request for federal habeas relief is denied as to this claim.

### C.    Multiplicitous Charges in Violation of the Double Jeopardy Clause

Graham alleges that the district court permitted multiplicitous charges because she was

charged with attempted first degree murder and aggravated assault on a law enforcement officer,

which is not a lesser charge, for the same overt act.  She also alleges that her rights against

collateral estoppel were violated because she was retried on the attempted first degree murder

counts using the same evidence as her previous trial at which she was acquitted of aggravated

arson and a mistrial was declared on the attempted first degree murder charges.

The Double Jeopardy Clause of the Fifth Amendment is incorporated to the States

through the Fourteenth Amendment.[34]  The doctrine of collateral estoppel is clearly established

federal law embodied in the Fifth Amendment guarantee against double jeopardy.[35]  "The Fifth

Amendment guarantee against double jeopardy protects not only against trial for the same

offense, but also 'against multiple punishments for the same offense.'"[36]  Where the same act or

transaction constitutes a violation of two distinct statutory provisions, the test to be applied to

determine whether there are two offenses or only one is whether each provision requires proof of

an additional fact which the other does not.[37]

        The doctrine of collateral estoppel provides that "when an issue of ultimate fact has once

been determined by a valid and final judgment, that issue cannot again be litigated between the

same parties in any future lawsuit."[38]  Where a previous acquittal was based upon a general

verdict, a court must "examine the record of a prior proceeding, taking into account the

pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury

could have grounded its verdict upon an issue other than that which the defendant seeks to

foreclose from consideration."[39]  "The inquiry 'must be set in a practical frame and viewed with

an eye to all the circumstances of the proceedings.'"[40]

        Petitioner's claim as to the charges of aggravated assault on a law enforcement officer are

_____

[34]*Ashe v. Swenson*, 397 U.S. 436, 437 (1970) (citing *Benton v. Md.*, 395 U.S. 784, 794 (1969)).

[35]*Id.* at 445.

[36]*Whalen v. United States*, 445 U.S. 684, 688 (1980) (quoting *N.C. v. Pearce*, 395 U.S. 711, 717 (1969)).

[37]*Blockburger v. United States*, 284 U.S. 299, 304 (1932).

[38]*Ashe,* 397 U.S. at 443.

[39]*Id.* at 444 (internal quotations and citation omitted).

[40]*Id.* (quoting *Sealfon v. United States*, 332 U.S. 575, 579 (1948)).

12

moot because the Kansas Court of Appeals overturned her convictions, finding that the State had violated K.S.A. § 21-3108.[41]  The court stated that it need not address whether the attempted murder and aggravated assault charges were multiplicious because it had reversed peitioner's aggravated assault charges.[42]  This determination by the state court was reasonable, and neither contrary to, nor an unreasonable application of, United States Supreme Court precedent.

Nor does collateral estoppel apply to Graham's case.  Petitioner was acquitted on aggravated arson in her first trial, but a mistrial was declared on the counts of attempted first degree murder after the jury twice informed the court that it was deadlocked.  Petitioner was retried and convicted of two counts of attempted first degree murder.  Aggravated arson is defined as arson committed upon a building in which there is a human being without the consent of the other person resulting in a substantial risk of bodily harm.[43]  Attempted first degree murder is defined as an overt act toward the perpetration of the crime of murder in the first degree,[44] which is the killing of a human being intentionally and with premeditation.[45]  Clearly aggravated arson and attempted murder require proof of additional facts which the other does not.  Furthermore, although the jury in Graham's first trial acquitted her of aggravated arson with a general verdict, the acquittal was likely not based on an issue of ultimate fact relevant to the attempted first degree murder charge.  If the jury in Graham's first trial had determined an issue of ultimate fact in Graham's favor that applied to both the aggravated arson and the attempted

---

[41]*State v. Graham*, No. 86,899 Slip op. At 6-7 (Kan. Ct. App. June 20, 2003) (unpublished opinion).

[42]*Id.*

[43]K.S.A. § 21-3719.

[44]K.S.A. § 21-3301.

[45]K.S.A. § 21-3401(a).

first degree murder charges, it would have acquitted on both counts, not just the aggravated arson.

The Kansas Court of Appeals found that the record supported the trial court's finding that it was necessary to declare a mistrial in the first trial and that petitioner's double jeopardy rights were not violated when she was tried a second time.[46]  The Kansas Supreme Court stated that petitioner's rights under the Double Jeopardy Clause were not violated since petitioner consented to the mistrial by not objecting, and because double jeopardy is not implicated unless the prosecutorial conduct that gave rise to the mistrial was intended to goad petitioner to move for a mistrial.[47]  The state court was correct when it held that it did not need to address whether the attempted murder and aggravated assault charges were multiplicitous because the aggravated assault charges were reversed.  This determination was reasonable, and was neither contrary to, nor an unreasonable application of federal law as determined by the Supreme Court.  Federal habeas relief is not warranted on this claim.

D.   **Prosecutorial Misconduct**

In reviewing a due process violation for prosecutorial misconduct, "it is not enough that the prosecutor's comments were undesirable or even universally condemned."[48]  The relevant question is whether the prosecutor's actions "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[49]  The state court applied the proper standard;

---

[46]*State v. Graham*, No. 86,899 Slip op. at 3-4 (Kan. Ct. App. June 20, 2003) (unpublished opinion).

[47]*Kansas v. Graham*, 277 Kan. 121, 134, 83 P.2d 143 (2004).

[48]*Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

[49]*Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).

14

therefore, the Court can only grant relief if the state court's decision was unreasonable.

The Kansas Supreme Court determined the prosecutor's statement that Graham lit the candle by the door was an incorrect fact.[50]  It also determined that the prosecutor's statement regarding Officer Krenowicz actually seeing Graham light the roman candles was not improper or at odds with the testimony because the officer heard sounds like roman candles going off before he was unable to get out of the house and it was a reasonable inference that Graham lit them.[51]  Furthermore, the Kansas Supreme Court found that the prosecutor's statement that "[Graham] didn't tell you anything that was true" was outside the wide latitude allowed in discussing the evidence.[52]  It did not, however, find the comments were so gross or flagrant as to deny Graham a fair trial.[53]  The Court agrees and does not find the state court's application of the proper standard unreasonable.  Graham's request for federal habeas relief is denied as to this claim.

**E.       Denial of K.S.A. § 60-1507 Petition**

Graham asserts that because the state court summarily dismissed her K.S.A. § 60-1507 motion, her constitutional rights, including due process and access to the courts, were violated. The Tenth Circuit has held that state postconviction collateral proceedings are not part of a criminal proceeding, but are civil proceedings that occur after the completion of criminal proceedings, and any claim of error in collateral proceedings does not directly implicate the

---

[50]*State v. Graham*, 277 Kan. at 127.

[51]*Id*. at 128.

[52]*Id*. at 131.

[53]*Id*. at 132.

constitutionality of the underlying conviction being challenged.[54]  Thus, "even if the state

postconviction petition was dismissed arbitrarily, the petitioner can present anew to the federal

courts any claim of violation to his federal constitutional rights."[55]  Petitioner's attack on the

state court proceeding is not a cognizable claim in a federal habeas proceeding because federal

habeas courts do not stand to review alleged errors of state law.  Accordingly, petitioner's

complaint about her state postconviction proceedings does not present a claim upon which

federal habeas relief can be granted.

Moreover, the Kansas Court of Appeals reviewed this claim and found that the district

court did not abuse its discretion.[56]  The court agreed with the trial court that a proceeding under

K.S.A. § 60-1507 was not a substitute for a second appeal, as petitioner attempted to do.[57]  The

Kansas Supreme Court denied review of petitioner's claim.  This Court is bound by the state

court's interpretation of state law.[58]  Petitioner fails to present a federal claim cognizable on

federal habeas review.

**IT IS THEREFORE ORDERED BY THE COURT** that petitioner's request for

federal habeas relief under 28 U.S.C. § 2254 (Doc. 1) is DENIED.

**IT IS FURTHER ORDERED** that petitioner's Motion to Compel (Doc. 51) is DENIED

as moot.

---

[54]*See Hopkinson v. Shillinger*, 866 F.2d 1185, 1218-19 (10th cir. 1989), *on reh'g*, 888 F.2d 1286 (1989), *overruling on other grounds recognized by Davis v. Maynard*, 911 F.2d 415, 417 (10th Cir. 1990) (collecting cases).

[55]*Id.*

[56]*Graham v. State*, No. 94,306, Slip op. At 4-5 (Kan. Ct. App. Apr. 14, 2006) (unpublished opinion).

[57]*Id.*

[58]*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

IT IS SO ORDERED.

Dated this 5<u>th</u> day of August 2008.

<u> S/ Julie A. Robinson  </u>
Julie A. Robinson
United States District Judge

lml/kmo

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LISA JANE GRAHAM,** | ) |
| | ) |
| **Petitioner,** | ) |
| **v.** | ) |
| | ) |
| **RICHARD KOERNER, et al.,** | ) |
| | )   **Case No. 06-3317-JAR** |
| | ) |
| **Respondents.** | ) |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on petitioner Lisa Graham's Petition for a Writ of Habeas Corpus (Doc.1) seeking federal habeas relief from a state conviction, pursuant to 28 U.S.C. § 2254.  Respondents filed an Answer and Return (Doc. 24) and petitioner filed a Traverse (Doc. 29).  Graham has also filed a Motion to Compel (Doc 51).  Having carefully considered the parties' submissions, the Court is prepared to rule.  For the reasons stated below, the Court denies petitioner's request for federal habeas relief.

## I.     Background

On September 28, 1999, Graham was found guilty in an unrelated charge and left the Court Services Office upset and without following court orders.  Graham was told that if she walked out, she would likely be jailed for 60 days, but left the court house anyway.  She went home and fell asleep.  When she awoke around three a.m., she stretched a wire from her refrigerator to the basement door hinge to alert her if it were opened and anyone came inside.  She also placed a bowl containing charcoal lighter fluid in front of the door and placed a candle between the bowl and the door.  Graham stated the purpose of the candle was in case someone

came in, the candle would be knocked into the charcoal fluid when the door opened and the person would see the flames and stay out.

On September 29, 1999, police officers went to Graham's home to serve a bench warrant because she missed her court appearance.  Graham did not open the door.  The officers contacted the Cellular One store where she worked and were told no one had seen her.

On September 30, 1999, Graham stated that she contemplated committing suicide by carbon monoxide poisoning.  While attempting to pour gasoline into her car, Graham poured gasoline all over the outside of her car, the garage floor, and herself.  Graham crawled through a window back into her house.  Graham brought the gasoline into the house with her and spilled gas all over the window sill, herself, and the basement.  Graham then decided to burn her house down and poured gasoline throughout the house.  After sleeping for a few hours, Graham awoke and typed a suicide letter and pinned it to her jacket.  She then packed a bag and put her gun in her back pocket.

Later that day, Graham spoke to a co-worker at Cellular One after leaving a message with her boss that she would not be coming back to work.  Her co-worker stated that Graham appeared to be aware that the police were looking for her and stated that she was not going to turn herself in.  After the call ended, the co-worker called the suicide hotline, and stated that she was worried Graham was going to commit suicide, that the police were looking for her, and that she had the impression that Graham felt there was no other way out besides suicide.

Officers Brandon Tomson and John Krenowicz, with the Salina Police Department, were dispatched to Graham's home in reference to the call to the suicide hotline.  The officers knocked on the door, but Graham did not answer.  Krenowicz entered the house through a

2

window, along with a third officer Lamer, and detected a strong odor of gasoline.  The officer

saw Graham at the doorway to the basement holding a cigarette lighter and roman candles.

Graham refused to drop the lighter as the officer requested and the officers decided to get out of

the house.

On the way out of the house, Officer Krenowicz heard popping sounds, like roman

candles going off.  Graham stated that she lit roman candles in the basement, kitchen, and living

room trying to set the house on fire.  Officer Krenowicz ran into the bowl and candle that

plaintiff set out earlier.  Once outside, the officers stated that they could see flaming balls

coming from the roman candles, and Officer Lamer was hit in the chest with a fire ball from a

roman candle while he attempted to extinguish the flames with a fire extinguisher.

As the officer was attempting to extinguish the fire balls, he saw an outline of Graham in

the house.  Graham dropped the roman candles and took the gun out of her back pocket and put

it under her chin.  Officer Lamer rushed into the house and tackled Graham.  When the officer

hit Graham, the gun went off.  He then removed Graham from the house. Officer Krenowicz

stated that he could not see through all of the smoke, but he heard the gunshot.

On October 4, 1999, Graham was charged in the District Court of Saline County with two

counts of attempted first degree murder in violation of K.S.A. § 21-3401(a) and one count of

aggravated arson in violation of K.S.A. § 21-3719.  The Court declared a mistrial after the jury

twice informed the judge that it was deadlocked on the murder counts.  Graham was acquitted of

the aggravated arson count.  The State subsequently amended the complaint to add four counts of

aggravated assault on a law enforcement officer in violation of K.S.A. § 21-3411.  At the

subsequent trial, Graham was convicted of two counts of attempted first degree murder and three

counts of aggravated assault on a law enforcement officer.  Graham was sentenced to 120 months imprisonment and 60 months post release supervision.

On appeal to the Kansas Court of Appeals, Graham alleged various trial court errors, insufficient evidence, double jeopardy and multiplicitous counts.  The court reversed the convictions of aggravated assault on a law enforcement officer and the 60 month post-release supervision and remanded the case for resentencing.[1]  The court affirmed the convictions of attempted first degree murder.[2]  The Kansas Supreme Court affirmed the decision of the Court of Appeals.[3]  Graham was resentenced to 120 months imprisonment and 36 months post release supervision.

The Saline County District Court denied Graham's K.S.A. § 60-1507 petition and the Kansas Court of Appeals affirmed the denial.[4]  On appeal, Graham alleged that the district court failed to make sufficient findings regarding each of her claims.  The Kansas Supreme Court denied review.  Graham filed for federal habeas relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Kansas.  Defendant subsequently filed a motion to compel requesting the Court issue a final determination on her § 2254 petition.

## II.    Standard

The Court must construe pro se pleadings liberally and apply a less stringent standard

---

[1] *State v. Graham*, No. 86,899 (Kan. Ct. App. June 20, 2003) (unpublished opinion).

[2] *Id*.

[3] *Kansas v. Graham*, 277 Kan. 121, 83 P.2d 142 (2004).

[4] *Graham v. State*, No. 94,306 (Kan. Ct. App. Apr. 14, 2006) (unpublished opinion).

than what is applicable to attorneys.[5]  However, the Court may not provide additional factual

allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's

behalf."[6]  The Court need only accept as true plaintiff's "well-pleaded factual contentions, not

his conclusory allegations."[7]

Because petitioner "filed [her] habeas petition after April 24, 1996, the provisions of the

Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this [proceeding]."[8]  The

AEDPA "'circumscribes a federal habeas court's review of a state-court decision.'"[9]  Under 28

U.S.C. § 2254(d), a federal court may not grant habeas relief on any claim adjudicated in state

court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> at the state court proceeding.

A state court's decision is "contrary to" an established federal law if the state court

reaches a different result than the Supreme Court would when presented with facts that are

"materially indistinguishable from a relevant Supreme Court precedent" or if the state court

---

[5]*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Whitney v. N.M.*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[6]*Whitney*, 113 F.3d at 1173.

[7]*E.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[8]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003) (citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997)), *cert. denied*, 540 U.S. 973 (2003).

[9]*Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir. 2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003)), *cert. denied*, 540 U.S. 916 (2003).

"applies a rule that contradicts the governing law" set forth in Supreme Court cases.[10]  A

decision is an "unreasonable application" of clearly established federal law if a "state court

identifies the correct governing legal principle from [the Supreme Court's] decisions but

unreasonably applies that principle to the facts of [a] prisoner's case."[11]  Unreasonable

application of facts includes an unreasonable extension of a principle, or an unreasonable refusal

to extend a principle to the facts at hand.[12]  The courts are to employ an objective standard in

determining what is unreasonable.[13]

Although unreasonable determinations of fact are a second basis for a writ, a state court's

determination of a factual issue is presumed to be correct.  The petitioner has the burden of

rebutting this presumption by clear and convincing evidence.[14]  "This presumption does not

extend to legal determinations or to mixed questions of law and fact."[15]  "That is, the 'deferential

standard of review does not apply if the state court employed the wrong legal standard in

deciding the merits of the federal issue.'"[16]  "Ultimately, our review of the state court's

proceedings is quite limited, as section 2254(d) sets forth a highly deferential standard for

---

[10]*Williams v. Taylor*, 529 U.S. 362, 405 (2000).

[11]*Id.* at 413.

[12]*Id.* at 407.

[13]*Id.* at 409.

[14]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003), *cert. denied*, 540 U.S. 973 (2003); *Fields v. Gibson*, 277 F.3d 1203, 1221 (10th Cir. 2002).

[15]*Martinez*, 330 F.3d at 1262 (citing *Herrera v. Lemaster*, 225 F.3d 1176, 1178-79 (10th Cir. 2000)).

[16]*Id.* (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)).

evaluating state-court rulings."[17]

## III.    Analysis

Graham requests relief based on twelve issues.  Eight of the issues are procedurally

defaulted and will not be considered by the Court.  The Court will consider in turn Graham's

remaining claims of insufficient evidence to support the conviction of attempted first degree

murder, multiplicitous charges in violation of the Double Jeopardy Clause, prosecutorial

misconduct, and denial of petitioner's K.S.A. § 60-1507 petition.

### A.    Procedurally Defaulted Claims

The State has suggested the following claims asserted by petitioner are procedurally

defaulted because they were not properly raised before the state courts:  (1) the court's reply to

the jury question of the definition of premeditation prejudiced the outcome of the case and

deprived her of a fair trial; (2) the exclusion of evidence by the court permitted malicious

prosecution; (3) the court violated her rights when it failed to present her theory of suicide in a

lesser charge to the jury; (4) the State committed prosecutorial misconduct by knowingly

presenting false testimony or implied findings to show that her claim had no merit; (5) the court

sequestered her from conferring with defense counsel after calling a recess; (6) a potential juror

raised a racial issue and the court's response gave the impression of racial partiality; (7) the trial

court erred in failing to request a change in venue; and (8) the Kansas doctrine for attempted

murder diminishes the State's burden of proof and was not used in her case with the legislative

---

[17]*Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir. 2003) (internal citations omitted), *cert. denied*, 540 U.S. 916 (2003).

intent.[18]

The procedural default doctrine bars a federal court's review of a state prisoner's federal claim where the prisoner failed to give the state courts a "full and fair" opportunity to resolve that claim—as the exhaustion doctrine requires—and the prisoner cannot cure that failure because state court remedies are no longer available.[19]  Under such circumstances, although the state courts did not explicitly deny relief on a state procedural bar, "there is a procedural default for purposes of federal habeas."[20]  In this case, petitioner's failure to seek or obtain full state court review of any of the above claims raised in the instant petition supports the State's claim of procedural default.

Petitioner can avoid the procedural default bar if she were able to show cause for the default and actual prejudice as a result of the alleged violation of federal law, or show that the failure to consider any procedurally defaulted claim will result in a fundamental miscarriage of justice.[21]  Generally, "cause" requires a showing by petitioner that some objective external factor impeded her efforts to comply with the state procedural rules.[22]  "Prejudice" requires a showing

---

[18]Petitioner argues that issue (8) was raised in her K.S.A. § 60-1507 petition.  The state court summarily denied her petition because it was a rehash of her direct appeal.  The issue was not raised on direct appeal, thus the Court concludes it was not raised in her K.S.A. § 60-1507 motion.

[19]*See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (procedural default doctrine preserves integrity of the exhaustion doctrine); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (a "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion . . . [because] there are no state remedies any longer 'available' to him," and, thus, that the procedural default doctrine prevents a habeas petitioner from circumventing the policy underlying the exhaustion doctrine).

[20]*Coleman*, 501 U.S. at 735 n.1.

[21]*Id*. at 749.

[22]*Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

that petitioner has suffered actual and substantial disadvantage as a result of the default.[23]  To excuse the procedural default on the basis of the fundamental miscarriage of justice exception, petitioner must supplement her constitutional claim with a colorable showing of factual innocence.[24]  To establish actual innocence, petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted h[er]."[25]  Furthermore, "'actual innocence' means factual innocence not mere legal insufficiency."[26]

Petitioner has not satisfied any of these requirements.  Graham mistakenly asserts that the issues were raised in state court and not procedurally defaulted.  Graham also asserts that the allegedly solicited testimony of Fire Inspector Helm about the origin of the fire caused a miscarriage of justice and probably resulted in the conviction of an innocent person.  The Court disagrees because there was ample evidence that Graham doused the house in gasoline and then set off several roman candles with the intent to burn the house down.  Petitioner has not shown that it is more likely than not that no reasonable juror would have convicted her without Helm's testimony.  Moreover, Graham only asserts legal insufficiency and makes no claim of factual innocence.  Therefore, in the absence of a showing of cause and prejudice or actual innocence, the Court declines to review the eight claims listed above.

**B.  Insufficient Evidence to Support a Conviction of Attempted First Degree Murder**

---

[23]*United States v. Frady*, 456 U.S. 152, 170 (1982).

[24]*Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).

[25]*Bousley v. United States*, 523 U.S. 614, 623 (quoting *Murray*, 477 U.S. at 496, 523 U.S. at 623 (internal quotations omitted).

[26]*Id.*

9

*Jackson v. Virginia*[27] establishes that when considering the sufficiency of the evidence in a federal habeas corpus petition, the Court must decide whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[28]  Sufficiency of the evidence is a mixed question of law and fact, so the Court must apply both 28 U.S.C. § 2254(d)(1) and (d)(2).[29]  Because of the presumption of correctness afforded by 28 U.S.C. § 2254(e), the Court must give deference to any determination of factual issues by the state court.[30]  Further, it is not the purview of a federal habeas court to weigh conflicting evidence or assess the credibility of the witnesses.[31]  Rather, a federal habeas court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."[32]

The State's theory of the case apparently was that Graham was angry with the legal system and wished to engage in "suicide by police" by forcing the police to kill her before they died in a house fire caused by her ignition of fireworks.  Graham argues that there was no intent or overt act to support a conviction of attempted first degree murder and there is evidence in her favor that outweighs the government's evidence.   The standard of review, however, prohibits this Court from making such a determination.[33]  The Court defers to any determination of factual

---

[27]443 U.S. 307, 313 (1979).

[28]*Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008) (quoting *Jackson,* 443 U.S. at 319).

[29]*Id.* (citing *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2005)).

[30]*Id.*  Additionally, the Court is cognizant that a state court's interpretation of a state statute "is a matter of state law binding on this court."  *Parker v. Scott*, 394 F.3d 1302, 1319 (10th Cir. 2005).

[31]*Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993).

[32]*Jackson*, 443 U.S. at 326.

[33]*Id.*

10

issues by the state court, which concluded after viewing the evidence in the light most favorable to the prosecution, that a rational trier of fact could find beyond a reasonable doubt that Graham committed attempted first degree murder.  Therefore, it is not the Court's place to review conflicting evidence.

The Court does not find the state court's decision contrary to or an unreasonable application of federal law.  Nor does it find the decision an unreasonable determination of the facts.  Graham knew the police were looking for her.  Graham poured gasoline inside the house and then set her house on fire with a cigarette lighter and roman candles after seeing a police officer inside of her home.  Although Graham contests the government's evidence of intent by arguing she did not know officers were in her house when she was firing the roman candles, the Court presumes the trier of fact resolved the conflict in favor of the prosecution.  After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of attempted first degree murder beyond a reasonable doubt.  Graham's request for federal habeas relief is denied as to this claim.

**C.    Multiplicitous Charges in Violation of the Double Jeopardy Clause**

Graham alleges that the district court permitted multiplicitous charges because she was charged with attempted first degree murder and aggravated assault on a law enforcement officer, which is not a lesser charge, for the same overt act.  She also alleges that her rights against collateral estoppel were violated because she was retried on the attempted first degree murder counts using the same evidence as her previous trial at which she was acquitted of aggravated arson and a mistrial was declared on the attempted first degree murder charges.

The Double Jeopardy Clause of the Fifth Amendment is incorporated to the States

through the Fourteenth Amendment.[34]  The doctrine of collateral estoppel is clearly established

federal law embodied in the Fifth Amendment guarantee against double jeopardy.[35]  "The Fifth

Amendment guarantee against double jeopardy protects not only against trial for the same

offense, but also 'against multiple punishments for the same offense.'"[36]  Where the same act or

transaction constitutes a violation of two distinct statutory provisions, the test to be applied to

determine whether there are two offenses or only one is whether each provision requires proof of

an additional fact which the other does not.[37]

The doctrine of collateral estoppel provides that "when an issue of ultimate fact has once

been determined by a valid and final judgment, that issue cannot again be litigated between the

same parties in any future lawsuit."[38]  Where a previous acquittal was based upon a general

verdict, a court must "examine the record of a prior proceeding, taking into account the

pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury

could have grounded its verdict upon an issue other than that which the defendant seeks to

foreclose from consideration."[39]  "The inquiry 'must be set in a practical frame and viewed with

an eye to all the circumstances of the proceedings.'"[40]

Petitioner's claim as to the charges of aggravated assault on a law enforcement officer are

---

[34]*Ashe v. Swenson*, 397 U.S. 436, 437 (1970) (citing *Benton v. Md.*, 395 U.S. 784, 794 (1969)).

[35]*Id.* at 445.

[36]*Whalen v. United States*, 445 U.S. 684, 688 (1980) (quoting *N.C. v. Pearce*, 395 U.S. 711, 717 (1969)).

[37]*Blockburger v. United States*, 284 U.S. 299, 304 (1932).

[38]*Ashe,* 397 U.S. at 443.

[39]*Id.* at 444 (internal quotations and citation omitted).

[40]*Id.* (quoting *Sealfon v. United States*, 332 U.S. 575, 579 (1948)).

moot because the Kansas Court of Appeals overturned her convictions, finding that the State had violated K.S.A. § 21-3108.[41]  The court stated that it need not address whether the attempted murder and aggravated assault charges were multiplicious because it had reversed peitioner's aggravated assault charges.[42]  This determination by the state court was reasonable, and neither contrary to, nor an unreasonable application of, United States Supreme Court precedent.

Nor does collateral estoppel apply to Graham's case.  Petitioner was acquitted on aggravated arson in her first trial, but a mistrial was declared on the counts of attempted first degree murder after the jury twice informed the court that it was deadlocked.  Petitioner was retried and convicted of two counts of attempted first degree murder.  Aggravated arson is defined as arson committed upon a building in which there is a human being without the consent of the other person resulting in a substantial risk of bodily harm.[43]  Attempted first degree murder is defined as an overt act toward the perpetration of the crime of murder in the first degree,[44] which is the killing of a human being intentionally and with premeditation.[45]  Clearly aggravated arson and attempted murder require proof of additional facts which the other does not.  Furthermore, although the jury in Graham's first trial acquitted her of aggravated arson with a general verdict, the acquittal was likely not based on an issue of ultimate fact relevant to the attempted first degree murder charge.  If the jury in Graham's first trial had determined an issue of ultimate fact in Graham's favor that applied to both the aggravated arson and the attempted

---

[41]*State v. Graham*, No. 86,899 Slip op. At 6-7 (Kan. Ct. App. June 20, 2003) (unpublished opinion).

[42]*Id.*

[43]K.S.A. § 21-3719.

[44]K.S.A. § 21-3301.

[45]K.S.A. § 21-3401(a).

first degree murder charges, it would have acquitted on both counts, not just the aggravated arson.

The Kansas Court of Appeals found that the record supported the trial court's finding that it was necessary to declare a mistrial in the first trial and that petitioner's double jeopardy rights were not violated when she was tried a second time.[46]  The Kansas Supreme Court stated that petitioner's rights under the Double Jeopardy Clause were not violated since petitioner consented to the mistrial by not objecting, and because double jeopardy is not implicated unless the prosecutorial conduct that gave rise to the mistrial was intended to goad petitioner to move for a mistrial.[47]  The state court was correct when it held that it did not need to address whether the attempted murder and aggravated assault charges were multiplicitous because the aggravated assault charges were reversed.  This determination was reasonable, and was neither contrary to, nor an unreasonable application of federal law as determined by the Supreme Court.  Federal habeas relief is not warranted on this claim.

**D.      Prosecutorial Misconduct**

In reviewing a due process violation for prosecutorial misconduct, "it is not enough that the prosecutor's comments were undesirable or even universally condemned."[48]  The relevant question is whether the prosecutor's actions "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[49]  The state court applied the proper standard;

---

[46]*State v. Graham*, No. 86,899 Slip op. at 3-4 (Kan. Ct. App. June 20, 2003) (unpublished opinion).

[47]*Kansas v. Graham*, 277 Kan. 121, 134, 83 P.2d 143 (2004).

[48]*Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

[49]*Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).

14

therefore, the Court can only grant relief if the state court's decision was unreasonable.

The Kansas Supreme Court determined the prosecutor's statement that Graham lit the candle by the door was an incorrect fact.[50]  It also determined that the prosecutor's statement regarding Officer Krenowicz actually seeing Graham light the roman candles was not improper or at odds with the testimony because the officer heard sounds like roman candles going off before he was unable to get out of the house and it was a reasonable inference that Graham lit them.[51]  Furthermore, the Kansas Supreme Court found that the prosecutor's statement that "[Graham] didn't tell you anything that was true" was outside the wide latitude allowed in discussing the evidence.[52]  It did not, however, find the comments were so gross or flagrant as to deny Graham a fair trial.[53]  The Court agrees and does not find the state court's application of the proper standard unreasonable.  Graham's request for federal habeas relief is denied as to this claim.

**E.      Denial of K.S.A. § 60-1507 Petition**

Graham asserts that because the state court summarily dismissed her K.S.A. § 60-1507 motion, her constitutional rights, including due process and access to the courts, were violated. The Tenth Circuit has held that state postconviction collateral proceedings are not part of a criminal proceeding, but are civil proceedings that occur after the completion of criminal proceedings, and any claim of error in collateral proceedings does not directly implicate the

---

[50]*State v. Graham*, 277 Kan. at 127.

[51]*Id.* at 128.

[52]*Id.* at 131.

[53]*Id.* at 132.

constitutionality of the underlying conviction being challenged.[54]  Thus, "even if the state postconviction petition was dismissed arbitrarily, the petitioner can present anew to the federal courts any claim of violation to his federal constitutional rights."[55]  Petitioner's attack on the state court proceeding is not a cognizable claim in a federal habeas proceeding because federal habeas courts do not stand to review alleged errors of state law.  Accordingly, petitioner's complaint about her state postconviction proceedings does not present a claim upon which federal habeas relief can be granted.

Moreover, the Kansas Court of Appeals reviewed this claim and found that the district court did not abuse its discretion.[56]  The court agreed with the trial court that a proceeding under K.S.A. § 60-1507 was not a substitute for a second appeal, as petitioner attempted to do.[57]  The Kansas Supreme Court denied review of petitioner's claim.  This Court is bound by the state court's interpretation of state law.[58]  Petitioner fails to present a federal claim cognizable on federal habeas review.

**IT IS THEREFORE ORDERED BY THE COURT** that petitioner's request for federal habeas relief under 28 U.S.C. § 2254 (Doc. 1) is DENIED.

**IT IS FURTHER ORDERED** that petitioner's Motion to Compel (Doc. 51) is DENIED as moot.

---

[54]*See Hopkinson v. Shillinger*, 866 F.2d 1185, 1218-19 (10th cir. 1989), *on reh'g*, 888 F.2d 1286 (1989), *overruling on other grounds recognized by Davis v. Maynard*, 911 F.2d 415, 417 (10th Cir. 1990) (collecting cases).

[55]*Id.*

[56]*Graham v. State*, No. 94,306, Slip op. At 4-5 (Kan. Ct. App. Apr. 14, 2006) (unpublished opinion).

[57]*Id.*

[58]*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

IT IS SO ORDERED.

Dated this 5<u>th</u> day of August 2008.

<u> S/ Julie A. Robinson  </u>
Julie A. Robinson
United States District Judge
